**Linda Marie LEONELLI, Appellant,**

v.

**Marcee Kay McMULLEN, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1997.

Filed Sept. 9, 1997.

---

3. Appellee's Motion To Dismiss Appeal and/or Suppress Appellant's Statement of the Facts is hereby denied.

Joel M. Eads, Philadelphia, for appellant.

Storm Jamison, Philadelphia, for appellee.

Before DEL SOLE, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On September 23, 1993, Linda Marie Leonelli, appellant herein, was injured in a two-vehicle collision which was caused when appellant, lawfully stopped at an intersection in order to permit an ambulance to cross through the intersection, was struck from behind by the vehicle driven by appellee. Upon witnessing the accident, the ambulance driver tended to appellant's injuries on the scene and then transported her to a nearby hospital. Although appellant complained of burning pain in her neck and lower back, X-rays revealed no fractures and appellant was released from the hospital.

For the next seven weeks appellant continued to experience pain throughout her neck, back and left arm. Because she was unemployed and uninsured, however, she did not consult a physician; opting instead to treat herself with bed rest and ice packs. Because the pain was unabated, however, appellant did seek treatment from her family physician, Dr. Richard Silver, in November and December of 1993. In his subsequent report, Dr. Silver concluded that appellant "had significant cervical injuries and decreased range of motion." R.R. at 63a. A program of anti-inflammatory medications, ice, exercise and physical therapy was recommended. Again, due to appellant's financial straits, additional diagnostic testing was precluded and appellant discontinued treatment with Dr. Silver.

From December of 1993, after terminating treatment with Dr. Silver, through November of 1994, appellant received acupuncture therapy. These treatments provided appellant with some degree of relief; however, the therapy was aborted because its continuance was not economically feasible.

In January of 1995, appellant gained employment with a medical corporation, Surgical Orthopedics. As a medical transcriber, appellant was required to sit at a computer terminal for much of the day. Although she was able to work a full 40–hour work week, appellant often kept her left arm in a sling and worked with ice packs on her neck and shoulders. As a result of her status, appellant received medical insurance and, additionally, was permitted to use the facility's physical therapy equipment free of charge. Dr. Richard J. Levenberg, one of appellant's employers, ordered appellant to undergo a cervical spine Magnetic Resonance Imaging (MRI), which, when compared to a pre-accident MRI, revealed two new disc bulges as well as a broad herniation of a third disc. Dr. Levenberg then recommended that appellant seek treatment with an orthopedist and/or neurologist. Accordingly, in June of 1995, appellant consulted with Drs. Anthony J. Palmaccio, Jr. and Donald M. McCarren. Dr. Palmaccio, an orthopedist, recommended that appellant undergo a series of epidural steroidal injections calculated to alleviate her pain.

On July 8, 1994, appellant initiated the instant action in which she sought to recover, *inter alia,* noneconomic damages for personal injuries. In April of 1996, appellee filed a motion for summary judgment in which appellee claimed that, because appellant was an uninsured motorist when she was injured, she was deemed, by statute, to have elected the limited tort option under the Motor Vehicle Financial Responsibility Law (MVFRL).[1] Therefore, pursuant to the Act, appellant was required prove that she sustained "serious injury" as a prerequisite to recovery.[2]

---

1. The section of the MVFRL upon which appellee relied reads, in pertinent part:

     (5) An owner of a currently registered private passenger motor vehicle who does not have financial responsibility shall be deemed to have chosen the limited tort alternative.

75 Pa.C.S.A. § 1705(a)(5).

2. The MVFRL limited tort option provides the following coverage:

     **A. "Limited Tort" Option**—The laws of the Commonwealth of Pennsylvania give you the

Further, appellee argued that appellant failed to sustain this threshold burden and that, as a consequence, appellee was entitled to judgment as a matter of law. In support of her motion for summary judgment, appellee filed appellant's deposition testimony, appellant's emergency room hospital records and the medical reports and opinions of Drs. Silver, Yussen, McCarren and Goldberg.

Appellant, in turn, filed an answer in opposition to summary judgment in which she specifically denied that she failed to sustain her pretrial threshold burden. In support thereof, appellant incorporated the four medical reports affixed to appellee's motion for summary judgment. Additionally, appellant filed her deposition testimony, taken during pretrial discovery, as well as a supporting affidavit in which appellant claimed that the injuries suffered in the accident "drastically affected" her lifestyle in both the employment and recreational context. R.R. at 89a.

After reviewing the evidence, the trial court concluded that, as a matter of law, appellant failed to establish that she suffered "serious injury" as a result of the accident. Accordingly, by order entered May 7, 1996, summary judgment was entered in favor of appellee. This appeal follows.

When reviewing the propriety of a trial court's order granting summary judgment, this Court must view the record in the light most favorable to the adverse party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. Because an order favorable to the moving party will prematurely end an action, summary judgment is only appropriate in the clearest of cases. *See, e.g., Skipworth v. Lead Industries Assoc.*, 547 Pa. 224, 228–30, 690 A.2d 169, 171 (1997); *Kingston Coal Co. v. Felton Mining*

*Co., Inc.*, 456 Pa.Super. 270, 275–77, 690 A.2d 284, 287 (1997).

■ In the context of a claim for nonmonetary damages for serious injuries pursuant to the MVFRL, this Court has previously held that it is for the trial court, rather than the jury, to initially determine whether plaintiff has established facts sufficient to support a finding of serious injury. As defined by the Act, a serious injury is that which involves "personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement." 75 Pa.C.S.A. § 1702. *See also Dodson v. Elvey*, 445 Pa.Super. 479, 493–95, 665 A.2d 1223, 1231 (1995) (*en banc*). When contemplating a claim premised upon an averment of serious impairment of bodily function, as in the present case, the court must consider:

(1) whether the plaintiff, as the moving party, has established that he or she has suffered serious impairment of a bodily function;

(2) whether the defendant, as the moving party, has established that the plaintiff has not suffered serious impairment of a bodily function; or

(3) whether there remains a genuine issue of material fact such that the issue should be resolved by the jury.

*See, e.g., Dodson*, 445 Pa.Super. at 494, 665 A.2d at 1231.

■ Further, in determining whether a claimed impairment is "serious," the court must consider the following factors: (1) the extent of the impairment; (2) the particular body function impaired; (3) the length of time that the impairment lasted; (4) the type of treatment required to correct the impairment; and (5) any other relevant factor. *Dodson*, 445 Pa.Super. at 498–501, 665 A.2d at 1233–34. *See also Murray v. McCann*, 442 Pa.Super. 30, 36–38, 658 A.2d 404, 407 (1995). There is no requirement that an

---

right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, **but not for pain and suffering or other nonmonetary damages unless the inju-**

ries suffered shall fall within the definition of "serious injury" as set forth in the policy or unless one of several exceptions noted in the policy applies. The annual premium for basic coverage as required by law under this "limited tort" option is $_____.
Additional coverages under this option are available at additional cost.
75 Pa.C.S.A. § 1705(a)(1)(A) (emphasis added).

injury be permanent in order to be serious; rather, plaintiff must establish that, for an extended period of time, the injuries substantially interfered with his or her normal activities. *Dodson*, 445 Pa.Super. at 498–501, 665 A.2d at 1233–34.

■ Applying this standard, the trial court in the instant matter determined that appellant, as a matter of law, failed to establish a serious impairment of bodily function and, thus, granted appellee's motion for summary judgment. We disagree with the court that, as a matter of law, appellant's injuries are not serious. Rather, we believe that a genuine issue of material fact exists as to whether appellant's injuries are compensable notwithstanding her status as a limited tort insured. Therefore, the order of May 16, 1996, is reversed and the case is remanded for further proceedings.

In order to justify its holding, the trial court cites to the following facts: (1) fifteen months after the accident, appellant began work as a medical transcriber, whereas; prior to the accident, appellant was unemployed; (2) although appellant refrains from engaging in certain recreational activities, she was never ordered to do so by a physician; (3) appellant has not presented any objective medical evidence in support of her claim that the injuries suffered in the accident caused serious impairment of her bodily function; and (4) appellant did not immediately consult with a physician following the accident. Slip op., 8/21/96 at 5–7.[3]

Initially, we must address the trial court's statement that summary judgment was properly granted, in part, because appellant did not present "objective medical evidence manifesting severe, disabling pain." *Id.* at 6. As stated, the pleadings in the instant matter included the medical reports of four physicians who had examined appellant. These reports were affixed to appellee's motion for summary judgement and were incorporated by reference in appellant's answer thereto.

■ Appellant was not required, as the trial court intimates, to refile these reports with the court. Rather, Pa.R.C.P. 1035.3 provides that, in opposing a motion for summary judgment, an adverse party may supplement the record. Conversely, the adverse party may also identify those portions of the existing record which support the adverse party's contention that summary judgment would be improper. We therefore find that appellant was entitled to identify the four existing medical records as supporting evidence of her claim that she suffered a serious impairment of bodily function. The fact that appellant did not additionally append these reports to her answer in opposition to summary judgment is, thus, of no moment.

With respect to the import that the trial court found in appellant's work record, it is true that appellant was able to gain employment approximately fifteen months following the collision. This fact, however, cannot be conclusive as to whether appellant's injuries were serious pursuant to the MVFRL. As stated, appellant often sits at her work station with her left arm in a sling and must use ice packs to alleviate the pain in her neck and shoulders. Additionally, appellant continues to consult a physician and take anti-inflammatory medications to alleviate her pain. Therefore, while appellant's ability to work may be a factor in determining the severity of her injuries, we disagree with the trial court that, merely by obtaining employment, appellant has tacitly admitted that her injuries were not serious.

Next, we consider whether, as the trial court found, the fact that appellant voluntarily refrained from certain activities and failed to immediately consult with a physician is fatal to her claim. Appellant was evaluated at an emergency room immediately following

---

**3.** Briefly, we must address the dissent's reliance, in part, upon the medical report of Dr. Jon J. Glass to establish that summary judgment was properly granted in the instant action. Said report, which was compiled in February of 1996, *concluded* that appellant's injuries were resolved and that appellant did *not* suffer permanent injuries as a result of the September, 1993, accident. This Court has specifically held that a plaintiff need not show that an injury is permanent in order to establish that the same is, or was, serious. As such, the fact that appellant's injuries and pain may have subsided to the level where they were no longer serious several years after the accident is of no consequence. Appellant need only demonstrate that her injuries substantially interfered with her normal activities for a substantial period of time. *Dodson, supra.*

the accident. After hospital personnel determined that appellant did not suffer any fractures in the accident, she was released. Thereafter, due to financial constraints, appellant sought home-treatment for approximately seven weeks prior to visiting with Dr. Silver.

We do not believe that these facts are conclusive evidence that appellant's injuries were not serious. Rather, appellant's reluctance to consult additional medical experts, supplemental to her emergency room evaluation, may fairly be attributed to the fact that appellant was unemployed and uninsured. To conclude that the seven-week lapse in treatment is evidence of a lack of serious injury is too speculative and, thus, unwarranted.

As a whole, the record includes sufficient evidence tending to show that appellant's injuries substantially interfered with her normal activities for a substantial period of time. *See Dodson, supra.* The trial court, therefore, committed an error of law in concluding that appellant failed to sustain her threshold burden of proving a serious impairment of bodily function. *See Skipworth; Kingston Coal, supra.*

By so concluding, we stress that our holding is not meant to imply that appellant should prevail on the merits of her claim. Rather, our holding is limited to a determination that, because appellant sustained her pretrial burden of proof, she should be entitled to present her case to a factfinder.

Order reversed; case remanded; jurisdiction relinquished.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting.

I respectfully disagree with the majority's conclusion that there is sufficient evidence tending to show that appellant suffered "serious injury," i.e., serious impairment of body function. While I agree that appellant submitted sufficient evidence to support her claim that she sustained an impairment to the use of her back, left arm and left leg, I cannot find that such impairment was "serious." Rather, the evidence tends to show that the consequences of appellant's injury have not had a serious impact for an extended time on her life. Appellant's normal activities have not been curtailed significantly since the accident. In fact, as the majority notes, the evidence reveals that prior to the accident, appellant was unemployed and that during her recovery she was seeking employment. Approximately fifteen months after the accident, she was employed as a medical transcriber. She testified that she is able to sit at the computer for eight to nine hours per day and that she works approximately forty hours per week. While appellant experiences pain while performing her work duties, the pain does not stop her from engaging in these duties. She identified no restrictions imposed by her physician on her work duties.[1] Moreover, appellant claimed that she no longer engages in recreational gardening or restoring her home. However, she identified no restrictions imposed by her physician on these activities. *Dodson v. Elvey,* 445 Pa.Super. 479, 665 A.2d 1223 (1995), *allocatur granted,* 544 Pa. 608, 674 A.2d 1072 (1996) (finding no serious impairment where appellant no longer engaged in bowling, weightlifting or softball, but physician never imposed restrictions on these activities). She admits that she engages in aerobic exercise approximately three times per week. Also, treatment during appellant's period of recovery involved anti-inflammatory medications, physical therapy, ice, ultrasound, acupuncture and an injection. Appellant has not been hospitalized nor has her injury required surgery. She has not worn a collar, brace or prosthetic device following the accident. *Murray v. McCann,* 442 Pa.Super. 30, 658 A.2d 404 (1995). The record contains a medical report from Jon J. Glass, M.D., who examined appellant on February 24, 1996. He found that, on the day of the examination, there were no abnormalities present and that there were no limitations in appellant's range of motion. He stated that in his medical opinion "Ms. Leonelli's reported injuries, as a

1. While I agree with the majority that appellant's employment is not conclusive as to whether her injuries were serious under the MVFRL, I find that her employment and the circumstances thereof are an important factor to be considered. *See Dodson, supra.*

result of the motor vehicle accident, have resolved completely. No further treatment is necessary or recommended. There is no permanent impairment as a result of the accident."

Based on the foregoing, I believe that the evidence reveals an objectively identifiable injury which has resolved, leaving only slight functional limitations. Although this Court recognizes that subjective complaints of pain may result in a serious impairment of body function, this is not such a case. *Dodson, supra.* While I do not doubt that appellant experienced pain, I conclude that the record shows no serious interference with her daily life for an extended period of time, and that there is no triable issue of fact that she suffered a minor rather than a serious injury. Accordingly, I respectfully dissent and would affirm the trial court's grant of summary judgment.